1

2

3

4

5

6

7

# UNITED STATES DISTRICT COURT

8

### EASTERN DISTRICT OF CALIFORNIA

9

10  THOMAS BLAKE KENNEDY,                    Case No.  1:09-cv-01161-AWI-SKO PC

11            Plaintiff,                     FINDINGS AND RECOMMENDATIONS
                                             RECOMMENDING DEFENDANTS CATE
12        v.                                 AND GONZALEZ'S MOTION FOR
                                             SUMMARY JUDGMENT BE GRANTED IN
13  F. GONZALEZ, et al.,                     PART AND DENIED IN PART

14            Defendants.                    (Doc. 39)

15                                           FIFTEEN-DAY OBJECTION DEADLINE

16  _____/

17       **Findings and Recommendations - Defendants' Motion for Summary Judgment**

18  **I.     Background**

19       Plaintiff Thomas Blake Kennedy ("Plaintiff"), a state prisoner proceeding pro se and in

20  forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on July 6, 2009.  This

21  action is proceeding on Plaintiff's amended complaint against Defendants Cate and Gonzalez

22  ("Defendants") for violating Plaintiff's rights under the Eighth Amendment of the United States

23  Constitution.  Plaintiff's claim arises out of the long term denial of outdoor exercise while he was

24  incarcerated at California Correctional Institution (CCI).  (Doc. 9, Amend. Comp.)   Plaintiff

25  alleges that he suffered physical, emotional, and mental injuries as a result of inadequate outdoor

26  exercise, and he is seeking damages, injunctive relief, and declaratory relief.  (Amend. Comp.;

27  Doc. 47, Pl. Opp.)

28  ///

1    On September 19, 2012, Defendants filed a motion for summary judgment.   (Doc. 39.)

2    Plaintiff filed an opposition on October 18, 2012, Defendants filed a reply on November 11, 2012,

3    and the motion has been submitted upon the record without oral argument.[1]   Local Rule 230(*l*).

4    (Docs. 47, 52.)

5    **II.    <u>Legal Standard</u>**

6    Any party may move for summary judgment, and the Court shall grant summary judgment

7    if the movant shows that there is no genuine dispute as to any material fact and the movant is

8    entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a) (quotation marks omitted);

9    *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).   Each party's position,

10   whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular

11   parts of materials in the record, including but not limited to depositions, documents, declarations,

12   or discovery; or (2) showing that the materials cited do not establish the presence or absence of a

13   genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.

14   Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).   The Court may consider other materials in the

15   record not cited to by the parties, but it is not required to do so.   Fed. R. Civ. P. 56(c)(3); *Carmen*

16   *v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v.*

17   *Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

18   Defendants do not bear the burden of proof at trial and in moving for summary judgment,

19   they need only prove an absence of evidence to support Plaintiff's case.   *In re Oracle Corp.*

20   *Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S.

21   317, 323, 106 S.Ct. 2548 (1986)).   If Defendants meet their initial burden, the burden then shifts to

22   Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re*

23   *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323).   This requires Plaintiff to

24   "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty*

25   *Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

26   ///

27

28   [1] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion.  *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 960-61 (9th Cir. 1998).

2

1    However, in judging the evidence at the summary judgment stage, the Court may not make

2    credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless, Inc.*, 509

3    F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all

4    inferences in the light most favorable to the nonmoving party and determine whether a genuine

5    issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v.*

6    *City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted),

7    *cert. denied*, 132 S.Ct. 1566 (2012).  The Court determines *only* whether there is a genuine issue

8    for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se

9    prisoner.  *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations

10   omitted).

11   **III.     Discussion**[2,3]

12          **A.     Eighth Amendment Claim for Denial of Adequate Outdoor Exercise**

13          This action is proceeding on Plaintiff's claim that he was not provided with adequate

14   outdoor exercise, in violation of the Eighth Amendment.  The Eighth Amendment's prohibition

15   against cruel and unusual punishment protects prisoners not only from inhumane methods of

16   punishment but also from inhumane conditions of confinement.  *Morgan v. Morgensen*, 465 F.3d

17   1041, 1045 (9th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994)

18   and *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted).

19   While conditions of confinement may be, and often are, restrictive and harsh, they must not

20   involve the wanton and unnecessary infliction of pain.  *Morgan*, 465 F.3d at 1045 (citing *Rhodes*,

21   452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate

22   penological purpose or contrary to evolving standards of decency that mark the progress of a

23   maturing society violate the Eighth Amendment.  *Morgan*, 465 F.3d at 1045 (quotation marks and

24

25   [2] In determining whether there exist triable issues of fact, the Court focuses herein on the issues it finds to be material. The parties may object to the Findings and Recommendations, but they should not construe the fact that the Court declines to specifically discuss every argument made and every piece of evidence submitted as an oversight.

26

27   [3] Plaintiff's amended complaint and opposition are verified; and contentions set forth in verified pro se pleadings, motions, and/or oppositions constitute evidence where the contentions are based on personal knowledge of facts admissible in evidence.  *Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004).

28

1  citations omitted); *Hope v. Pelzer*, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); *Rhodes*, 452 U.S. at

2  346.

3    Prison officials have a duty to ensure that prisoners are provided adequate shelter, food,

4  clothing, sanitation, medical care, and personal safety, *Johnson v. Lewis*, 217 F.3d 726, 731 (9th

5  Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains

6  while in prison represents a constitutional violation, *Morgan*, 465 F.3d at 1045 (quotation marks

7  omitted).  To maintain an Eighth Amendment claim, a prisoner must show that prison officials

8  were deliberately indifferent to a substantial risk of harm to his health or safety.  *E.g., Farmer*, 511

9  U.S. at 847; *Thomas*, 611 F.3d at 1150-51; *Foster v. Runnels*, 554 F.3d 807, 812-14 (9th Cir.

10  2009); *Morgan*, 465 F.3d at 1045; *Johnson*, 217 F.3d at 731; *Frost v. Agnos*, 152 F.3d 1124, 1128

11  (9th Cir. 1998).  This requires the prisoner to demonstrate (1) the existence of an objectively

12  serious risk of harm and (2) that, subjectively, prison officials knew of and disregarded that risk.

13  *E.g., Farmer*, 511 U.S. at 834, 847; *Thomas*, 611 F.3d at 1150-51; *Foster*, 554 F.3d at 812.

14    **1.    Objective Element – Substantial Risk of Serious Harm**

15    The deprivation of a single identifiable human need such as exercise may violate the

16  Eighth Amendment, *Thomas*, 611 F.3d at 1151 (citation omitted), and in this Circuit, it is well

17  established that prisoners have a constitutional right to outdoor exercise, *Thomas*, 611 F.3d at

18  1051-52; *Richardson v. Runnels*, 594 F.3d 666, 672 (9th Cir. 2010); *Hebbe v. Pliler*, 627 F.3d 338,

19  344 (9th Cir. 2010); *Pierce v. County of Orange*, 526 F.3d 1190, 1211 (9th Cir. 2008); *Hearns v.

20  Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005); *Lopez v. Smith*, 203 F.3d 1122, 1133 (9th Cir.

21  2000); *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997); *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th

22  Cir. 1995); *LeMaire v. Maas*s, 12 F.3d 1444, 1457 (9th Cir. 1993).  The right to outdoor exercise

23  is not absolute or indefeasible nor does it trump all other considerations, *Norwood v. Vance*, 591

24  F.3d 1062, 1068 (9th Cir. 2010) (quotation marks omitted), but "ordinarily the lack of outside

25  exercise for extended periods is a sufficiently serious deprivation for Eighth Amendment

26  purposes," *Thomas*, 611 F.3d at 1151 (citation and internal quotation marks omitted); *Hearns*, 413

27  F.3d at 1042.

28  ///

4

1    In this case, Plaintiff was housed in the Security Housing Unit (SHU) on Facility IV-B at

2    CCI from February 25, 2008, to May 10 or 11, 2010.  (Doc. 39, Motion, Gonzalez Dec., ¶11 & Ex.

3    A; Doc. 54, Pl. Depo. Tx., 11:23-12:12; Amend. Comp., p. 4.)  Plaintiff is a validated associate of

4    the Northern Structure prison gang, and due to his validation, he was assigned to an Individual

5    Exercise Module (IEM) yard rather than a group yard.[4] (Gonzalez Dec., ¶¶6, 7; Pl. Depo. Tx.,

6    5:18-19 & 12:18-13:3.)  During the relevant time period, there were 580-600 inmates in 406 cells,

7    and there were 32 IEMs.  (Gonzalez Dec., ¶13; Pl. Depo. Tx., 12:15-17; Amend. Comp., ¶6.)  As a

8    result, there were insufficient IEMs to provide the inmates on Facility IV-B with between 5 and 10

9    hours of outdoor exercise, as provided for under the applicable state prison regulations.[5]

10   (Gonzalez Dec., ¶¶12, 13; Amend. Comp., ¶8.)  Plaintiff received outdoor exercise sessions in an

11   IEM as available, and while he was at CCI, he had 72 two-hour IEM sessions.  (Gonzalez Dec.,

12   ¶23; Pl. Opp., 9:28-10:10.)  Thus, over the 115 weeks Plaintiff was at CCI, he had 144 hours of

13   outdoor exercise, which averages to 75 minutes of outdoor exercise per week over a period of 2

14   years and 3 months.

15   While Plaintiff was able to exercise in his cell and he testified that he kept relatively fit by

16   exercising in his cell for approximately one hour a day, performing push-ups, burpees, and various

17   calisthenics such as jumping jacks, Plaintiff has a right to out-of-cell exercise.  *E.g., Thomas*, 611

18   F.3d at 1151. (Pl. Depo. Tx., 34:10-35:24.)  The Ninth Circuit has long recognized that outdoor

19   exercise is extremely important to the psychological and physical well-being of inmates, *Spain v.*

20   *Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) (citations omitted), and the Court rejects

21   Defendants' argument that because Plaintiff was able to and did exercise in his cell, he fails to

22   meet the objective element of his claim.

23   As a SHU inmate, Plaintiff was confined to his cell 24 hours a day except for showers,

24   medical appointments, and other occasional out-of-cell activities; and his confinement was long

25   term given his indeterminate SHU term.  (Amend. Comp., ¶11.)  The fact that Plaintiff was

26

27   [4] Plaintiff disputes that he is an associate, but he does not dispute the fact he was validated as an associate.  (Pl. Depo. Tx., 29:13-32:25.)

28   [5] Cal. Code Regs., tit. 15, § 3343(h).

1   periodically released from his cell for other purposes such as showers, church services, medical

2   appointments, law library access, and visitation, as Defendants argue, is immaterial; those out-of-

3   cell activities do not substitute for the fresh air and outdoor exercise to which Plaintiff is entitled

4   under the Constitution.[6] *See Hebbe*, 627 F.3d at 343-44 ("Forcing a prisoner to choose between

5   using the law library and exercising outdoors is impermissible because an inmate cannot be forced

6   to sacrifice one constitutionally protected right solely because another is respected.") (internal

7   quotation marks and citation omitted).

8         Similarly unavailing is Defendants' argument that Plaintiff could have debriefed, which

9   would have made him eligible for group exercise yard.  Plaintiff argues that he is not a gang

10   member  or  associate,  making  debriefing  an  unrealistic  option.[7]   (Pl. Opp., 21:27-28.)

11   Additionally, Plaintiff has a right to out-of-cell exercise and the placement of an unrelated

12   condition on the ability to enjoy that right was firmly rejected by the Ninth Circuit in the *Thomas*

13   case.[8] *Thomas*, 611 F.3d at 1153-54.

14         While there is no bright line in terms of how many hours of out-of-cell exercise per week

15   satisfy the Constitution, an average 75 minutes per week is objectively inadequate for inmates who

16   spend the vast majority of their time inside their cells, long term.[9]  *Pierce*, 526 F.3d at 1211-13

17   (holding that 90 minutes of exercise per week is not sufficient for inmates in administrative

---

18

19

20

21

[6] Although Plaintiff's other out-of-cell activities do not substitute for outdoor exercise, the Court notes that they were minimal in any event.  Over the 115 week period Plaintiff was at CCI, he showered every 2 to 3 days on a rotating basis, he attended church services approximately 10 to 15 times, and he had 40 out-of-cell medical appointments, 37 law library visits, and visitation 4 times; and Plaintiff attests that he was handcuffed for all out-of-cell movements and his medical, law library, and chapel visits occurred in a 3 foot by 3 foot cage.  (Gonzalez Dec., ¶¶18-21; Pl. Opp., 17:26-18:20.)

22

[7] Debriefing involves admitting gang affiliation and providing information about other prisoners in order to obtain release from the SHU.  (Pl. Opp., 21:19-21.)

23

[8] Defendants failed to address *Thomas v. Ponder* in their motion, despite its clear relevance.

24

25

26

27

28

[9] The Court notes that in his opposition, Plaintiff conflates the outdoor exercise to which he is entitled to under the Constitution to that provided for in prison regulations.  While the Ninth Circuit has not determined precisely where the constitutional floor lies, 2 hours of outdoor exercise per week over the course of at least 2 days has passed constitutional muster.  *Pierce*, 526 F.3d at 1211-13.  Plaintiff argues in part that he has an entitlement of 5 to 10 hours of outdoor exercise per week.  (*E.g.*, Doc. 47, Pl. Opp., 10:1-3, 11:26-27, & 15-20.)  However, a violation of prison regulations does not support a claim under section 1983, *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009); *Ove v. Gwinn*, 264 F.3d 817, 824-25 (9th Cir. 2001); *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997), and the Constitution has not been found to mandate 5 to 10 hours of outdoor exercise per week, *e.g., Pierce*, 526 F.3d at 1211-13.

1  segregation who spend the bulk of their time inside their cells, but upholding as corrective of the

2  violation the lower court's order requiring jail officials to allow those inmates to exercise at least 2

3  days a week for at least 2 hours total per week); *Noble v. Adams*, 636 F.3d 525, 527 (9th Cir.

4  2011) (no outdoor exercise or other privileges for approximately 15 months); *Hebbe*, 627 F.3d at

5  343-44 (inmate permitted out of his cell for only 8 hours a week and impermissibly required to

6  choose between exercise and law library access during those hours); *Thomas*, 611 F.3d at 1151-52

7  (no out-of-cell exercise for 13 months was an objectively serious deprivation); *LeMaire*, 12 F.3d

8  at 1457-58 (no out-of-cell exercise for most of a 5-year period met objective element); *Allen*, 48

9  F.3d at 1087 (in-cell confinement for almost 24 hours a day and 45 minutes of outside exercise per

10  week for a 6-week period sufficient to meet objective element); *Spain*, 600 F.2d at 199 (requiring

11  inmates confined for a period of years be provided outdoor exercise 1 hour per day, 5 days a

12  week). Here, except for showers and other occasional appointments, Plaintiff was confined to his

13  cell for 24 hours a day for a period of 27 months and under those circumstances, the provision of

14  only 75 minutes of outdoor exercise per week constituted a sufficiently serious deprivation under

15  the Eighth Amendment. Defendants' arguments to the contrary are simply untenable.

16                   **2.**      **<u>Subjective Element – Deliberate Indifference</u>**

17        Having determined that Plaintiff satisfies the objective element of his Eighth Amendment

18  claim, the inquiry turns to whether Defendants were subjectively deliberately indifferent.

19  Deliberate indifference is a two-party inquiry which requires a showing that prison officials were

20  aware of the risk to the inmate's health or safety and that they deliberately disregarded that risk.

21  *Foster*, 554 F.3d at 814 (citing *Johnson*, 217 F.3d at 734). "First, the inmate must show that the

22  prison officials were aware of a 'substantial risk of serious harm' to an inmate's health or safety."

23  *Thomas*, 611 F.3d at 1150 (quoting *Farmer*, 511 U.S. at 837). "'A factfinder may conclude that a

24  prison official knew of a substantial risk from the very fact that the risk is obvious,'" *Foster*, 554

25  F.3d at 814 (quoting *Farmer*, 511 U.S. at 842), and "'if an inmate presents evidence of very

26  obvious and blatant circumstances indicating that the prison official knew a substantial risk of

27  serious harm existed, then it is proper to infer that the official must have known of the risk,'"

28  *Thomas*, 611 F.3d at 1152 (quoting *Foster*, 554 F.3d at 814). "Second, the inmate must show that

1   the prison officials had no 'reasonable' justification for the deprivation, in spite of that risk."  *Id.* at

2   1150-51 (quoting *Farmer*, 511 U.S. at 844).

3       In this case, there is no dispute that the outdoor exercise schedule at issue was the direct

4   result of an insufficient number of IEMs on Facility IV-B at CCI.   Thus, the issue is whether

5   Plaintiff has presented sufficient evidence to raise a triable issue of fact as to Defendants'

6   knowledge of and disregard of that situation.

7                    **a.     <u>Defendant Cate</u>**

8       Defendant Cate was appointed as Secretary of the California Department of Corrections

9   and Rehabilitation in 2008, and it is his position that he delegated oversight of SHU operations to

10  the Undersecretary of Operations and the Director of Adult Institutions, and that he did not dictate

11  yard groups or take any position on yard assignments for individual institutions.  (Motion, Ex. B,

12  Cate ROGS 1, 4, 8.)

13      Liability may not be imposed on supervisory personnel under the theory of *respondeat*

14  *superior*, *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77, 129 S.Ct. 1937, 1948-49 (2009); *Simmons*, 609

15  F.3d at 1020-21; *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v.*

16  *Williams*, 297 F.3d 930, 934 (9th Cir. 2002), and as an administrator, Defendant Cate may only be

17  held liable if he "participated in or directed the violations, or knew of the violations and failed to

18  act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *accord Starr v. Baca*,

19  652 F.3d 1202, 1205-08 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012); *Corales v. Bennett*,

20  567 F.3d 554, 570 (9th Cir. 2009); *Preschooler II v. Clark County School Board of Trustees*, 479

21  F.3d 1175, 1182 (9th Cir. 2007); *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997).  Some

22  culpable action or inaction must be attributable to Defendant Cate with respect to the inability of

23  prison officials at CCI to provide Facility IV-B inmates with adequate outdoor exercise due to the

24  insufficient number of IEMs.

25      Plaintiff holds Defendant Cate responsible for enforcement of the policy which precluded

26  validated prison gang members and associates from using the group exercise yard and required

27  them to be assigned to IEMs.  However, the issue is whether Defendant Cate was aware that

28  Facility IV-B inmates were being deprived of adequate outdoor exercise at CCI during the time

period in question due to an insufficient number of IEMs.  Defendant Cate has met his burden as the moving party by submitting evidence that he delegated oversight of SHU operations and he did not dictate yard groups or take any position on yard assignments for individual institutions.  As a result, the burden shifts to Plaintiff and he must "show more than the mere existence of a scintilla of evidence."  *In re Oracle Corp.*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 252).

In his deposition, Plaintiff testified that he was told by an IGI (Institutional Gang Investigator) Lieutenant that "Sacramento and the warden" would not allow group yard, and it seemed to him that it was common knowledge "Sacramento" meant the Secretary.  (Pl. Depo. Tx., 25:15-26:2.)  Assuming that the lieutenant's statement is excluded from the rule against hearsay on the basis that it was made by an agent or employee of Defendant Cate, the statement is nonetheless speculative.  Fed. R. Evid. 701, 801(d)(2)(D).  Furthermore, the statement pertains to the underlying policy precluding the assignment of gang members and associates to group yard, not to knowledge of the insufficient number of IEMs at CCI.

Next, Plaintiff may not cite to the filing of his own complaint as evidence Defendant Cate was aware of the insufficient number of IEMs, and the two memoranda submitted by Plaintiff regarding the lack of sufficient exercise facilities were not written to Defendant Cate and they do not establish he had knowledge of the inadequate number of IEMs.[10]  (Pl. Opp., 11:14-16 & Ex. D.)  While the memorandum from 2000 refers to legal action by inmate Romero over inadequate exercise, there is no mention of Defendant Cate.  The general fact that inmates file suit over prison conditions does not establish that Defendant Cate had the requisite personal knowledge of the violation at issue in this action; and the fact that Defendant Cate was generally aware that inmates file grievances regarding lack of exercise is similarly insufficient to demonstrate Defendant's knowledge as to the specific conditions at CCI during the time period in question.  (Pl. Opp. 24:19-22; Ex. G, RFA 20, court record p. 178.)

Plaintiff's submission of documents from another court case also fails to establish that Defendant Cate had personal knowledge that Plaintiff was being afforded minimal exercise at CCI.  (Opp., 11:14-18 & 24:12-18; Pl. Ex. F.)  While the Court may take judicial notice of other

---

[10] The memorandum from 2000 is complete while the memorandum from 2010 is incomplete.

1   court cases, it must be supplied with the necessary information by the requesting party and judicial

2   notice may not be taken of the factual findings.  Fed. R. Evid. 201; *see Amponsah v. Holder*, 709

3   F.3d 1318, 1327 n.5 (9th Cir. 2013) ("A court in one case may not take judicial notice of the *truth*

4   of judicial findings of fact in another case.") (emphasis in original); *Wyatt v. Terhune*, 315 F.3d

5   1108, 1114 (9th Cir. 2003) ("[T]aking judicial notice of findings of fact from another case exceeds

6   Rule 201.").

7       Finally, Plaintiff's argument that Defendant Cate was responsible for the care, custody, and

8   treatment of inmates, supported by Defendant's discovery responses, is similarly unavailing.  (Pl.

9   Opp., 13:28-16 & 24:4-11.)  Liability may not be imposed under section 1983 in the absence of a

10  causal connection between the violation at issue and each named defendant. *Lemire v. California*

11  *Dept. of Corr. & Rehab.*, __ F.3d __, __, No. 11-15475, 2013 WL 4007558, at *7-8 (9th Cir. Aug.

12  7, 2013); *Starr*, 652 F.3d at 1207-08.  Plaintiff's argument, if accepted, would allow for the

13  imposition of liability on Defendant Cate under the theory of *respondeat superior*, which is not

14  permissible.

15      Plaintiff bears the burden of identifying specific evidence from which a reasonable trier of

16  fact could conclude that Defendant Cate was aware that CCI Facility IV-B inmates were being

17  denied adequate outdoor exercise, and the Court finds that Plaintiff has not met this burden.  In the

18  absence of any triable issues of fact with respect to whether Defendant Cate knew of the

19  substantial risk of serious harm to Plaintiff's health arising out of the inadequate number of IEMs

20  at CCI between 2008 and 2010, the Court recommends that Defendant Cate be granted judgment

21  as a matter of law on the Plaintiff's Eighth Amendment claim against him.

### b.    Defendant Gonzalez

23      Defendant Gonzalez argues that Plaintiff is a validated prison gang associate, and the

24  decision to require gang members and associates to exercise in IEMs was made to reduce violence

25  on the group exercise yards.  (Gonzalez Dec., ¶¶6, 7, 27; Borg Dec., ¶¶8, 9; Tristan Dec., ¶6.)  As

26  a result of the decision, the number of violent incidents dropped from 50 in 2000 to 3 in 2008 and

27  6 in 2009, which represented a 94% decrease in 2008 and an 88% decrease in 2009.  (Gonzalez

28  Dec., ¶11; Borg Dec., ¶9.)    Defendant argues that according the deference to which prison

officials are entitled, he did not act with deliberate indifference, and that the decision to restrict Plaintiff to IEM usage was reasonably related to a legitimate penological purpose. *Turner v. Safley*, 482 U.S. 78, 89-91, 107 S.Ct. 2254 (1987). Finally, Defendant argues that the policy was in place prior to his employment as Acting Warden and Warden at CCI, and because he was without the power to change the policy, there is an insufficient causal link between the alleged violation and his actions or omissions. (Gonzalez Dec., ¶¶9, 25.)

### 1)   Knowledge

Turning first to whether Defendant Gonzalez had the requisite knowledge, Defendant held the positions of Acting Warden and then Warden during the time Plaintiff was at CCI, and he concedes the inadequacy of only 32 IEMs on Facility IV-B. (Gonzalez Dec., ¶¶3, 13.) Given that the deprivation of outdoor exercise was objectively sufficiently serious and that Defendant knew prison officials at CCI were unable to provide Facility IV-B inmates the regular outdoor exercise to which they were entitled under the regulations due to inadequate facilities, the Court finds that Defendant was aware of the substantial risk of serious harm to Plaintiff's health. *Thomas*, 611 F.3d at 1151-52; *Richardson*, 594 F.3d at 672.

### 2)   Reasonableness

The inquiry next turns to the reasonableness of Defendant Gonzalez's response to the known risk. *Thomas*, 611 F.3d at 1152.

Turning first to Defendant's analysis of the IEM policy in light of the *Turner* factors, under the four-factor analysis articulated in *Turner*, a prison regulation which impinges on inmates' constitutional rights will be upheld as "valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. However, the deferential *Turner* test applies "*only* to rights that are 'inconsistent with proper incarceration.'" *Johnson v. California*, 543 U.S. 499, 509-10, 125 S.Ct. 1141 (2005) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 131, 123 S.Ct. 2162 (2003)) (emphasis in original). Violations of the Eighth Amendment are judged under the deliberate indifference standard rather than the *Turner* test "because the integrity of the criminal justice system depends on full compliance with the Eighth Amendment." *Johnson*, 543 U.S. at 511.

///

1    Therefore, the Court declines Defendant's invitation to apply the *Turner* test to Plaintiff's Eighth

2    Amendment outdoor exercise claim.  *Id.*

3          The Ninth Circuit has instructed that prison officials are entitled to wide-ranging deference

4    so long as their judgment does not manifest either deliberate indifference or an intent to inflict

5    harm.  *Noble*, 646 F.3d at 1143 (quotation marks omitted) (citing *Bell v. Wolfish*, 441 U.S. 520,

6    547, 99 S.Ct. 1861 (1979)).  As such, the broader determination that it was appropriate to assign

7    gang members and associates to IEMs and preclude them from group exercise yard to help reduce

8    violence is precisely the type of determination which is entitled to wide-ranging deference.

9    However, Plaintiff was not denied adequate outdoor exercise due to any an emergency-based

10   lockdown, his own violent behavior, or some other situation requiring prison officials to balance

11   Plaintiff's right to outdoor exercise with the need to restore or maintain order.  *Noble*, 646 F.3d at

12   1147-48 (finding the defendants were entitled to qualified immunity where extended lockdowns

13   were necessary to restore order following violent attacks on staff); *Norwood*, 591 F.3d at 1070

14   (granting the defendants qualified immunity where lockdown was instituted in response to a

15   genuine emergency created by prison violence); *LeMaire*, 12 F.3d at 1458 (curtailment of inmate's

16   outdoor exercise privileges over a five-year period due directly to his own misbehavior did not

17   support a finding of deliberate indifference).  To the contrary, Plaintiff was denied adequate

18   outdoor exercise solely because there were not enough IEMs on the Facility IV-B yard to

19   accommodate the inmates who, pursuant to policy, required use of an IEM.

20         Defendant Gonzalez concedes that he was aware that Facility IV-B inmates were not

21   getting adequate outdoor exercise due to the insufficient number of IEMs, but he argues that his

22   options were limited and there were plans in place at the time to build additional IEMs.  (Gonzalez

23   Dec., ¶26.)  Defendant presents evidence the process to build additional IEMS typically takes

24   years, and construction of additional IEMs was ultimately completed in 2012.  (Tristan Dec.,

25   ¶¶13-15; Borg Dec., Ex. A.)

26         However, "[t]he cost or inconvenience of providing adequate facilities is not a defense to

27   the imposition of a cruel punishment."  *Spain*, 600 F2d at 200.  This is not a situation involving a

28   "genuine emergency," and the deprivation at issue was long term.  *Thomas*, 611 F.3d at 1154-55.

1   Whether or not Defendant Gonzalez acted reasonably under the circumstances, which includes an

2   evaluation of whether continued adherence to the underlying policy was reasonable given the lack

3   of sufficient IEMs, is an issue for the trier of fact.  *Id.* at 1152-56.  With respect to Defendant's

4   argument that he was not responsible for the enactment of the underlying policy, it is enough that

5   he was the head of the institution during the relevant time period and he knew of the violation.  *Id.*

6   at 1150-52.  The trier of fact may ultimately determine that Defendant responded reasonably given

7   all the relevant circumstances, but Plaintiff is entitled to have that issue resolved by a jury.  *Id*. at

8   1152-56.  Accordingly, the Court finds that Defendant Gonzalez is not entitled to judgment as a

9   matter of law on Plaintiff's Eighth Amendment claim.

10                    **3.     Qualified Immunity**

11                        **a)     Two-Part Inquiry**

12        Defendant Gonzalez also argues that he is entitled to qualified immunity, which is

13   "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is

14   effectively lost if a case is erroneously permitted to go to trial."  *Mueller v. Auker*, 576 F.3d 979,

15   993 (9th Cir. 2009) (citation and internal quotations omitted).   Qualified immunity shields

16   government officials from civil damages unless their conduct violates "clearly established

17   statutory or constitutional rights of which a reasonable person would have known."  *Harlow v.*

18   *Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).   "Qualified immunity balances two

19   important interests - the need to hold public officials accountable when they exercise power

20   irresponsibly and the need to shield officials from harassment, distraction, and liability when they

21   perform their duties reasonably," *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009),

22   and it protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v.*

23   *Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

24        In resolving the claim of qualified immunity, the Court must determine whether, taken in

25   the light most favorable to Plaintiff, Defendant's conduct violated a constitutional right, and if so,

26   whether the right was clearly established.  *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151

27   (2001); *Mueller*, 576 F.3d at 993.  While often beneficial to address in that order, the Court has

28   discretion to address the two-step inquiry in the order it deems most suitable under the

1   circumstances.  *Pearson*, 555 U.S. at 236 (overruling holding in *Saucier* that the two-step inquiry

2   must be conducted in that order, and the second step is reached only if the court first finds a

3   constitutional violation); *Mueller*, 576 F.3d at 993-94.

4        In this instance, the evidence viewed in the light most favorable to Plaintiff demonstrates a

5   constitutional violation and there exist triable issues of fact as to whether that right was violated.

6   Therefore, the Court proceeds without further discussion to the second step of the inquiry.

7            **b)    Clearly Established Right**

8        "For a constitutional right to be clearly established, its contours must be sufficiently clear

9   that a reasonable officer would understand that what he is doing violates that right."  *Hope v.*

10  *Pelzer*, 536 U.S. at 739.  While the reasonableness inquiry may not be undertaken as a broad,

11  general proposition, neither is official action entitled to protection "unless the very action in

12  question has previously been held unlawful."  *Id*.  "Specificity only requires that the unlawfulness

13  be apparent under preexisting law," *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) (citation

14  omitted), and prison personnel "can still be on notice that their conduct violates established law

15  even in novel factual circumstances," *Hope*, 536 U.S. at 741.

16       It had long been clear by 2008 that, except for short term deprivations with no medical

17  effects, the Eighth Amendment requires prison officials to provide inmates with regular outdoor

18  exercise, *May*, 109 F.3d at 565; *Keenan v. Hall*, 83 F.3d 1083, 1089-90 (9th Cir. 1996); *Allen*, 48

19  F.3d at 1087-88, and that inadequate facilities do not excuse the failure to do so, *Spain*, 600 F2d at

20  200.  "Qualified immunity gives government officials breathing room to make reasonable but

21  mistaken judgments about open legal questions," *Ashcroft v. al-Kidd*, __ U.S. __, __, 131 S.Ct.

22  2074, 2085 (2011), and the existence of triable issues of fact as to whether prison officials were

23  deliberately indifferent does not necessarily preclude qualified immunity, *Estate of Ford v.*

24  *Ramirez-Palmer*, 301 F.3d 1043, 1053 (9th Cir. 2002).  Here, however, the law was sufficiently

25  clear that a reasonable official would have known that he could not deny regular outdoor exercise

26  on the basis that there were not enough IEMs available.  *Keenan*, 83 F.3d at 1089-90; *Allen*, 48

27  F.3d at 1084; *Spain*, 600 F2d at 200.  This situation does not involve a reasonable but mistaken

28  judgment about an open legal question.  *See Noble*, 646 F.3d at 1142-43 (how or when to return to

1   normal operations, including outdoor exercise, following a state of emergency caused by a major

2   riot was not clearly established); *Norwood*, 591 F.3d at 1068-70 (reasonable prison officials could

3   have believed that restricting outdoor exercise in an attempt to restore order during a series of

4   brutal attacks was lawful).  Therefore, the Court finds that Defendant Gonzalez is not entitled to

5   qualified immunity.

6          **B.      Injunctive and Declaratory Relief**

7          Finally, in addition to damages, Plaintiff seeks an injunction mandating that Defendant

8   Gonzalez appropriate necessary funds and implement a viable plan to construct sufficient IEMs to

9   provide Facility IV-B inmates with adequate out-of-cell exercise, and he seeks a declaration that

10  his rights were violated.

11         To obtain a permanent injunction, Plaintiff "must demonstrate: (1) that [he] has suffered an

12  irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to

13  compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and

14  defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved

15  by a permanent injunction."  *Monsanto Co. v. Geerston Seed Farms*, __ U.S. __, __, 130 S.Ct.

16  2743, 2756 (2010) (quoting *eBay, Inc. v. Merceexchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct.

17  1837, 1839 (2006)).   Additionally, any award of equitable relief is governed by the Prison

18  Litigation Reform Act, which provides in relevant part, "Prospective relief in any civil action with

19  respect to prison conditions shall extend no further than necessary to correct the violation of the

20  Federal right of a particular plaintiff or plaintiffs.   The court shall not grant or approve any

21  prospective relief unless the court finds that such relief is narrowly drawn, extends no further than

22  necessary to correct the violation of the Federal right, and is the least intrusive means necessary to

23  correct the violation of the Federal right."  18 U.S.C. § 3626(a)(1)(A).

24         The Court previously denied Defendants Cate and Gonzalez's motion to dismiss Plaintiff's

25  injunctive relief claim on the ground that his 2010 transfer from CCI to Pelican Bay State Prison

26  did not render the claim moot in light of the capable-of-repetition-yet-evading-review exception to

27  the mootness doctrine.  *Alvarez v. Hill*, 667 F.3d 1061, 1063-64 (9th Cir. 2012); *Demery v.*

28  *Arpaio*, 378 F.3d 1020, 1025-26 (9th Cir. 2004).  Because Plaintiff was serving an indeterminate

1    SHU term and there are only three SHUs in the state at which he may be housed, the Court

2    declined to find that Plaintiff's claim was so clearly foreclosed that Defendants were entitled to

3    dismissal at the pleading stage.

4         Defendant Gonzalez now submits evidence that additional IEMs have been constructed

5    and Facility IV-B inmates receive the ten hours of outdoor exercise to which they are entitled

6    under state regulations.  While Defendant Gonzalez's bare attestation to facts based merely on

7    "information and belief" is not sufficient, the report prepared by expert witness Robert Borg

8    provides that as a result of construction completed in 2012, there are now 105 IEMs on Facility

9    IV-B and SHU inmates receive at least 10 hours of out-of-cell exercise per week.[11]  (Gonzales

10   Dec., ¶16; Borg Dec., Ex. A.)  Plaintiff desires to dispute these facts, but he has not submitted any

11   admissible evidence bringing them into dispute.  Neither arguments regarding CCI's past inability

12   to carry out the plans on paper for adequate exercise nor arguments that Defendants have a vested

13   interest at stake and independent verification should be undertaken by the Court constitute

14   evidence.

15        In as much as Plaintiff sought an injunction to build additional IEMs and the number of

16   IEMs subsequently increased from 32 to 105, with evidence that SHU inmates are now getting

17   adequate exercise, Plaintiff's request for this form of relief is moot.  *Alvarez*, 667 F.3d at 1063-64.

18   Additionally, "'[a] case or controversy exists justifying declaratory relief only when the

19   challenged government activity is not contingent, has not evaporated or disappeared, and, by its

20   continuing and brooding presence, casts what may well be a substantial adverse effect on the

21   interests of the petitioning parties.'"  *Pinnacle Armor, Inc. v. U.S.*, 648 F.3d 708, 715 (9th Cir.

22   2011) (quoting *Headwaters, Inc. v. Bureau of Land Management, Medford Dist.*, 893 F.2d 1012,

23   1015 (9th Cir. 1989)).  Plaintiff's claim for damages necessarily entails a determination whether

24   his rights were violated and therefore, his separate request for declaratory relief is subsumed by

25

26   [11] Personal knowledge and competence to testify may be inferred from a declaration itself, *Barthelemy v. Air Line Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (per curiam) (quotation marks omitted), but here, Defendant

27   Gonzalez retired on December 31, 2010, and the only basis stated in support of the fact in question is "information and belief," *see Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1529

28   (9th Cir. 1991) (declaration based not on personal knowledge but on information and belief does not suffice).

1    that claim.[12]  *Rhodes v. Robinson*, 408 F.3d 559, 565-66 n.8 (9th Cir. 2005) (quotation marks

2    omitted).

3    **IV.     Conclusion and Recommendation**

4           Accordingly, for the reasons set forth above, the Court HEREBY RECOMMENDS that:

5           1.      Defendants Cate and Gonzalez's motion for summary judgment, filed on

6    September 19, 2012, be GRANTED IN PART and DENIED IN PART as follows:

7                  a.      Defendant Cate's motion for summary adjudication on Plaintiff's Eighth

8    Amendment claim be granted;

9                  b.      Defendant Gonzalez's motion for summary adjudication on Plaintiff's

10   Eighth Amendment claim be denied;

11                 c.      Defendant Gonzalez's motion for summary adjudication on the ground of

12   qualified immunity be denied; and

13                 d.      Plaintiff's claim for injunctive relief be dismissed as moot;

14          2.      Plaintiff's claim for declaratory relief be dismissed as moot; and

15          3.      Plaintiff's Eighth Amendment claim for damages against Defendant Gonzalez be

16   set for jury trial.

17          These Findings and Recommendations will be submitted to the United States District

18   Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).   Within

19   **fifteen (15) days** after being served with these Findings and Recommendations, the parties may

20   file written objections with the Court.   The document should be captioned "Objections to

21   Magistrate Judge's Findings and Recommendations."   The parties are advised that failure to file

22   objections within the specified time may waive the right to appeal the District Court's order.

23   *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

24

25   IT IS SO ORDERED.

26      Dated:   __September 2, 2013__               _____/s/ Sheila K. Oberto_____
                                                     UNITED STATES MAGISTRATE JUDGE

27

28
     _____
     [12] The Court may *sua sponte* screen out deficient claims.  28 U.S.C. § 1915A.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28